QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David Bilsker (Bar No. 152383)
  davidbilsker@quinnemanuel.com
  Emily O'Brien (Bar No. 240072)
  emilyobrien@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA  94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Avery Dennison
Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AVERY DENNISON CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Defendants. | Civil Action No. 10-7931 MRP (RZx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**<br><br>Honorable Mariana R. Pfaelzer<br><br>Hearing Date:    February 7, 2011<br>Hearing Time:    11:00 a.m.<br>Hearing Place:   Courtroom 12<br><br>Trial Date:  None Set<br>Complaint Filed: October 21, 2010 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ....................................................................................... 1

III.   ARGUMENT ............................................................................................ 4

     A.     The Legal Standard .......................................................................... 4

     B.     No Factors Favor Transferring the Case to Minnesota ...................... 6

          1.     Many Of 3M's Anticompetitive Actions Took Place In California ........................................................................... 7

          2.     California Courts Should Decide California Law ...................... 9

     C.     Judicial Economy Does Not Favor Transfer ..................................... 10

     D.     Convenience Does Not Favor Transfer To Minnesota ....................... 15

IV.    CONCLUSION ....................................................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AVERY'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER

# TABLE OF AUTHORITIES

**Page**

## Cases

*3M Co. et al. v. Avery Dennison Corp.*,
No. 10-2630 (D. Minn.)....................................................................................2

*Allied Tube Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) ......................................................................................12

*American Ass'n for Justice v. The American Trial Lawyers Ass'n, Inc.*,
Civ. No. 07-4626 (JNE/JJG), 2008 WL 2690290 (D. Minn. Jul. 1, 2008) .........12

*ASM America, Inc. v. Genus Inc.*,
No. 01-2190, 2002 U.S. Dist. LEXIS 1351 (N.D. Cal.  Jan. 9, 2002) .................13

*Carlisle Corp. v. Hayes*,
635 F. Supp. 962 (S.D. Cal. 1986) ....................................................................14

*Chip-Mender v. The Sherwin-Williams Co.*,
No. 05-3465, 2006 U.S. Dist. LEXIS 2176 (N.D. Cal. Jan. 3, 2006) .................14

*Commodity Futures Trading Comm. v. Savage*,
611 F.2d 270 (9th Cir. 1979) ...........................................................................6

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ...........................................................................4

*DIRECTV, Inc. v. EQ Stuff, Inc.*,
207 F. Supp. 2d 1077 (C.D. Cal. 2002) .............................................................5

*Ellis v. Costco Wholesale Corp.*,
372 F. Supp. 2d 530 (N.D. Cal. 2005).............................................................9

*Everpure, LLC v. Selecto, Inc., No. CV 09-2844 AHM (FFMx)*,
2010 WL 480970 (C.D. Cal. Feb. 3, 2010) ......................................................5

*Florens Container v. Cho Yang Shipping*,
245 F. Supp. 2d 1086 (N.D. Cal. 2002).............................................................4

*Ford Motor Co. v. Ryan*,
182 F.2d 329 (2d Cir. 1950) .............................................................................5

*FTC v. Watson Pharms., Inc.*,
    611 F. Supp. 2d 1081 (C.D. Cal. 2009) .............................................................. 13

*Global Candle Gallery Licensing Co. v. Nabozny*,
    No. 8:08-cv-2532-T-30TGW, 2009 WL 3852794 (M.D. Fla. Nov. 18, 2009).... 14

*Greatamerica Leasing Corp. v. Davis Lynch, Inc.*,
    No. 10-CV-13-LRR, 2010 WL 265222 (N.D. Iowa June 30, 2010)................... 12

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
    179 F.R.D. 264 (C.D. Cal. 1998).......................................................................... 6

*Hewlett-Packard Co. v. GenRad, Inc.*,
    882 F. Supp. 1141 (D. Mass. 1995)..................................................................... 14

*In re Echostar Corp*,
    388 Fed. Appx. 994, 995 (Fed. Cir. 2010) .......................................................... 12

*In re Innotron Diagnostics*,
    800 F.2d 1077 (Fed. Cir. 1986) ........................................................................... 14

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ............................................................................ 6, 9

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
    232 F.3d 979 (9th Cir. 2000) ........................................................................... 9, 10

*Los Angeles Memorial Coliseum Commission v. National Football League*,
    89 F.R.D. 497 (C.D. Cal. 1981)............................................................................ 5

*Masimo Corp. v. Philips Electronics North America Corp.*,
    No. 09-80-JJF-MPT, 2010 WL 925864 (D. Del. Mar. 11, 2010) ....................... 14

*Polycom, Inc. v. Codian, Ltd.*,
    No. 2:05-cv-520 (DF), 2007 U.S. Dist. LEXIS 98087
    (E.D. Tex. April 23, 2007) .................................................................................. 14

*Quality Measurement Co. v. IPSOS S.A.*,
    56 Fed. Appx. 639 (6th Cir. 2003) ...................................................................... 12

*Seiko Epson Corp. v. Glory South Software Mfg., Inc.*,
    684 F. Supp. 2d 1231 (D. Or. 2010)................................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AVERY'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER

*STX, Inc. v. Trik Stik, Inc.*,
    708 F. Supp. 1551 (N.D. Cal. 1988) .......................................................... 6

*U.S. v. Brown University in Providence in State of R.I. and Providence Plantations*,
    772 F. Supp. 241 (E.D. Pa. 1991) ............................................................. 5

*U.S. v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso*,
    362 F. Supp. 1175 (C.D. Cal. 2005) .......................................................... 5

*Van Dusen v. Barrack*,
    376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ................................ 5

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) ..................................................... 9

### **Statutes**

23 C.F.R. 635.411 ............................................................................................ 2

15 U.S.C. § 1 .................................................................................................... 3

15 U.S.C. § 2 ........................................................................................... 4, 6, 13

15 U.S.C. § 1125 .............................................................................................. 4

28 U.S.C. § 1404(a) ...................................................................................... 4, 5

4, Cal. Bus. & Prof. Code § 16720 ............................................................ 3, 11

6, Cal. Bs. & Prof. Code § 17500. .............................................................. 4, 11

### **OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*,
    §§ 3841-55 ............................................................................................... 6

I.    **INTRODUCTION**

Defendants' (collectively "3M") motion to transfer this multi-count antitrust and unfair competition action related to reflective sheeting used on highway signs to the District of Minnesota rests on two faulty premises.  First, 3M asserts that the state of California has minimal interest in this action as none of 3M's challenged conduct occurred here.  Not so.  Many of 3M's anticompetitive acts did occur in California.  Moreover, California is the most populous state in the nation.  It has the most motorists and surely purchases significantly more reflective sheeting for highway signs than Minnesota does.  As a result, California's interest in adjudicating this case, where the anticompetitive acts relate to reflective sheeting products that are purchased solely with public funds, is substantial.

Second, 3M improperly characterizes the nature of Avery's claims.  Out of the nine claims that Avery has asserted, 3M focuses on just one of the many facts supporting some of these claims, proceeds to argue that this fact overlaps with an issue in a patent case between the parties that is pending in Minnesota, and then concludes that what happens in Minnesota will be dispositive of Avery's case.  3M's argument is not correct.  The Minnesota case is not dispositive of any of Avery's claims.

Given California's significant interest in assuring competitive prices for reflective sheeting used on highway signs and the relatively minor and non-dispositive factual overlap between this case and the Minnesota case, 3M's motion to transfer the action to Minnesota should be denied.

II.    **BACKGROUND**

Highway traffic signs are made by placing reflective sheeting having adhesive backing onto metal blanks.  The reflective sheeting can be made from a number of different designs.  One design uses glass beads to reflect light.  This type of material is relatively inexpensive and has reflective values on the low end of the spectrum.

-1-

1   Another more efficient design uses reflecting prisms in the sheeting.  The prisms

2   have been known and used as reflectors since the 1920's.

3   　　　One type of prism is created from three triangles whose edges meet at

4   approximately right angles to form a pyramid shape.  These prisms are termed

5   "truncated" cube corners.  A second type of prism is formed by having the edges of

6   shapes such as rectangles or squares meet at approximately right angles.  These

7   prisms are called "full" cube corners.  This case centers on 3M's anticompetitive

8   activities directed to reflective sheeting that incorporate prism designs.

9   　　　Reflective sheeting is purchased exclusively with public funds.  *3M Co. et al.*

10   *v. Avery Dennison Corp.*, No. 10-2630, Dkt. 13, at ¶¶ 23-24 (D. Minn. July 28,

11   2010).  State and local governments put out bid requests for sheeting meeting certain

12   performance characteristics.  (*See* Declaration of Emily C. O'Brien in Support of

13   Plaintiff's Opposition to 3M's Motion to Transfer ("O'Brien Decl."), Ex. A at 8-9).

14   The required performance characteristics are described by sheeting types as defined

15   under ASTM (a standards setting body) guidelines.  (*Id.*).  The contracts are

16   normally awarded to the low bidder.  (*Id.*, Ex. B at 19).  The money to pay for the

17   sheeting either comes directly from state or city coffers or from the federal

18   government when the Department of Transportation approves the use of federal

19   funds.  *See 3M Co.*, No. 10-2630, Dkt. 13, at ¶ 25.  Federal funds are only available

20   when there are at least two suppliers of a material.  *See* 23 C.F.R. 635.411.

21   　　　Avery and 3M have offered competing reflective sheeting products based on

22   prism designs for at least a dozen years.  In June 2010, 3M brought a patent

23   infringement suit in the District of Minnesota alleging that Avery's newest reflective

24   sheeting product infringed thirteen 3M patents.  Avery's new product is an ASTM

25   Type XI sheeting.  (Avery's Complaint ("Cmplt.") at ¶ 82).  3M had been the only

26   supplier of a type XI product since 2005.  (Declaration of Mary Jo Abler in Support

27   of Defendants' Motion to Transfer ("Abler Decl.") at ¶ 14).  Before Avery's answer

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AVERY'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER

1   was due, 3M moved for a preliminary injunction where it sought to halt the

2   introduction of Avery's product.

3        In response to 3M's complaint and motion for a preliminary injunction, Avery

4   argued, among other things, that the 3M patents were invalid, that 3M could not

5   show irreparable harm, and that 3M had waived its right to assert the patents.  The

6   waiver argument was based on representations 3M made to the ASTM committee

7   responsible for approving the Type XI sheeting standard about withdrawing its

8   patent claims.

9        On December 21, 2010 the Minnesota court denied 3M's request for a

10  preliminary injunction.  (O'Brien Decl., Ex. C at 61).  It found that Avery presented

11  a substantial question as to the validity of 3M's asserted patents and that 3M had not

12  shown irreparable harm.  (*Id.* at 52, 57, 60-61).  Because of its finding regarding

13  invalidity, the court did not reach Avery's waiver argument.  (*Id.* at 52-53).  3M

14  argues here that the waiver argument overlaps with Avery's antitrust and unfair

15  competition claims, and that the Minnesota Court's rulings relating to validity,

16  infringement and waiver will be dispositive of Avery's claims.  (Defendants'

17  Memorandum of Points and Authorities in Support of its Motion to Transfer

18  ("Mot.") at 4-5, 9-12).  In reality, any overlap is limited and nothing in Minnesota

19  will dispose of Avery's case here.

20       Avery has asserted multiple causes of action stemming from 3M's

21  anticompetitive acts that have affected competition in the highway signage markets.

22  For example, Avery alleged under Section 1 of the Sherman Act, and under Section

23  16720 of the Cartwright Act, that 3M has restrained trade in two different markets

24  for reflective sheeting.  (Cmplt. at Counts 3-4).  One market encompasses three

25  different types of reflective sheeting:  Types VIII, IX and XI.  (*Id.* at ¶ 2).  The other

26  market is defined by Type XI sheeting.  (*Id.* at ¶ 1).  These causes of action are

27  based on agreements that 3M entered with contractors to effectively prevent them

28  from using Avery sheeting products.

-3-

1    Avery's claims under Section 2 of the Sherman Act and California and

2 Business and Professions Code Section 17200 are pled with respect to three basic

3 facts: (1) 3M improperly manipulated the ASTM process to secure passage of the

4 Type XI standard by stacking the committee and making agreements with

5 committee members to obtain favorable votes on the Type XI standard; (2) 3M is

6 using the new standard in conjunction with false advertising to steer customers away

7 from purchasing other types of sheeting; and (3) 3M is asserting patents that it had

8 represented to the ASTM committees voting on the new standard that it would not

9 assert. (Cmplt. at Counts 1, 2, 7). Through these acts, 3M has monopolized and/or

10 attempted to monopolize the two reflective sheeting markets.

11    Avery also pled stand-alone claims for false advertising under Section 43(a)

12 of the Lanham Act and Section 17500 of the California Business and Profession

13 Code. (*See* Cmplt. at Counts 5-6). 3M uses this advertising to steer customers away

14 from competitors' products that could otherwise satisfy bid specifications.[1]

15 **III.   ARGUMENT**

16    **A.   The Legal Standard**

17    This Court has discretion in deciding whether to grant a motion to transfer

18 filed under 28 U.S.C. § 1404(a). *Decker Coal Co. v. Commonwealth Edison Co*.,

19 805 F.2d 834, 843 (9th Cir. 1986). In the Ninth Circuit, a plaintiff's choice of forum

20 is given substantial weight and a party moving to transfer a case must present strong

21 grounds for disturbing that choice. *Id.* (district court did not abuse its discretion in

22 denying defendant's request to transfer where defendant did not make the necessary

23 "strong showing of inconvenience to warrant upsetting the plaintiff's choice of

24 forum"); *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092

25 _____

26    [1]   Recently, it was revealed that 3M was behind a study used as the basis to force
27 state and local governments to replace highway signs that used capital letters to
identify locations. (*See* O'Brien Decl., Ex. D).

28

(N.D. Cal. 2002) (denying defendant's request to transfer since, "under Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere"); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) (denying defendant's request to transfer, as "[t]here is a strong presumption in favor of the plaintiff's choice of forum").

Courts give particular deference to the plaintiff's choice of forum in antitrust suits. *Los Angeles Memorial Coliseum Commission v. National Football League*, 89 F.R.D. 497, 500 (C.D. Cal. 1981) (denying defendant's request to transfer because "defendant's burden on a transfer motion is said to be especially heavy in antitrust suits, where plaintiff's choice of forum is entitled to particular respect"); *see also Ford Motor Co. v. Ryan*, 182 F.2d 329, 332 (2d Cir. 1950) (denying defendant's request to transfer in antitrust case where "taking the plaintiffs' venue-privilege into account, the defendants have not borne their burden of making out a 'strong' enough case for the transfer"); *U.S. v. Brown University in Providence in State of R.I. and Providence Plantations*, 772 F. Supp. 241, 244 (E.D. Pa. 1991) (denying defendant's request to transfer, because "choice of venue [] is entitled to such deference in an antitrust case").

Transfer is not appropriate merely to shift the inconvenience from one party to another. *See Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964) (reversing and remanding grant of motion to transfer, holding that "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient"); *U.S. v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso*, 362 F. Supp. 1175, 1185-6 (C.D. Cal. 2005) (denying defendant's motion to transfer because "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer"); *Everpure, LLC v. Selecto, Inc., No. CV 09-2844 AHM (FFMx),* 2010

-5-

WL 480970, at *2-4 (C.D. Cal. Feb. 3, 2010) (denying defendant's motion to transfer).  The burden is on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice.  *See, e.g., Commodity Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (affirming denial of motion to transfer); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988) (denying motion to transfer on the grounds that "defendant can demonstrate no strong reason for transfer").  3M's attempt to shift the inconvenience of travel to Avery is not a basis to transfer the case.

In deciding a motion to transfer venue, courts weigh multiple factors, including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations.  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §§ 3841-55; *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (suggesting the following factors may be relevant in assessing a motion to transfer venue: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof"); accord *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 269 (C.D. Cal. 1998).   None of these factors weigh in favor of disturbing Avery's choice of forum.

## B.   No Factors Favor Transferring the Case to Minnesota

Focusing entirely on the waiver issue that resulted from the ASTM process to secure passage of Type XI classification for reflective sheeting, which is but one of many facts that support Avery's claims under Section 2 of the Sherman Act and the

-6-

California state law claims (*see* Cmplt. at Counts 1, 2, 7-9), 3M states: "this case has virtually no connection to California apart from the existence of Avery's global headquarters in this District." (Mot. at 2:9-10, 15, 23).  While 3M has chosen to focus on one particular act – 3M's representations about its patents in ASTM meetings that were held neither in California nor Minnesota – it has ignored many of the other facts that establish the strong connection and interest California has in this case.  Put simply, 3M's anticompetitive acts have occurred in California and this state is suffering and will suffer the effects of those acts on a much larger scale than Minnesota.

### 1.    Many Of 3M's Anticompetitive Actions Took Place In California

While 3M's campaign of monopolistic actions stretches across the country, a significant number of those actions have taken place in California.  California surely purchases significantly more retroreflective sheeting than Minnesota and virtually any other state.  As a result, 3M's anticompetitive practices, which include ensuring that proprietary specifications are inserted into reflective sheeting bid processes intended to be open and awarded to the lowest bidders, have significant effect in California. (*See, e.g.*, Cmplt. at ¶ 87, Counts 3,4).  When these specifications are used in conjunction with contracts that 3M has in place with sign fabricators, other competitors are effectively excluded from competing for California business in the two product markets Avery has identified in its complaint. (*See id.* at ¶¶ 1, 2, 15, 87, Counts 3, 4).

3M's improper bid specification tactics have been implemented in a number of California cities and counties.  For example, in the City of Riverside, recent bid requirements specify not Type XI sheeting generically, but 3M's Type XI sheeting as the city's preferred sheeting:  "3M Diamond Grade 3 (ASTM XI) Translucent Reflective Sheeting Series 4090T shall be used in the production of the internally illuminated street name sign panels, or a City approved equal." (O'Brien Decl., Ex.

A at 3).  The same bid request also includes full-page graphic examples depicting signs with 3M sheeting, as well as specific instructions for payment referring only to 3M sheeting.  (*Id.* at 10-13).  Similarly, bids in California cities sometimes include a requirement for diamond shaped patterns on the sheeting, which is satisfied only by 3M's product and has no relevance to performance.  (*See, e.g.*, *id.*, Ex. E at 88).

Moreover, based on recent data regarding the number of motorists, the miles of highway, the number of highway signs using reflective sheeting and the sums spent on highway infrastructure, the effective magnitude of 3M's anticompetitive actions are logically greater in California than in Minnesota.  California has more than thirty million registered vehicles, nearly twice the amount of the next highest state, and about seven times as many vehicles as Minnesota.   (*See id.*, Ex. F). California has more licensed drivers (over 21 million) than any other state, including Minnesota (2.9 million).  (*See id.*, Ex. G).  California has over 35,000 more roadway miles than does Minnesota (*see id.*, Ex. H) and every year, California drivers cover more than 327 billion miles, nearly six times that of Minnesota drivers.  (*See id.*, Ex. I at 124, Ex. J at 147).  And, since 2009, California has received more highway infrastructure investment funds pursuant to the American Recovery and Reinvestment Act than any other state – five times the amount that Minnesota received.  (*Id.*, Ex. K at 173).

In addition to those massive federal expenditures, state and local spending on highway projects is also many multiples higher in California than it is in Minnesota. (*See id.*, Ex. L, M).  As a result, 3M's anticompetitive tactics, which drive up prices for reflective sheeting used for highway projects, will have a greater monetary effect in California than Minnesota.  Consequently, while Minnesota and its citizens also suffer from 3M's monopolistic actions, there can be no basis to believe that their interest in deciding this case is greater than California's.  California unquestionably has a vested interest in the sale of materials such as reflective sheeting that directly relate to the public safety on California roads and highways.

## 2.   California Courts Should Decide California Law

Because the legal basis for the majority of Avery's claims involves California law, California's interest in deciding this matter is greater than Minnesota's.  Of the nine counts set forth in Avery's antitrust claim, five are based on California law.  In general, California courts are more familiar with California law than are courts from other jurisdictions and such familiarity is a factor to be considered in deciding whether to grant a motion to transfer.  *See GNC Franchising*, 211 F.3d at 498-99.  In addition, the California forum itself has an interest in deciding California claims.  See *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 539 (N.D. Cal. 2005) (denying defendant's motion to transfer where California has a "public interest in trying plaintiffs' California claims within this state.").  This is particularly true with respect to plaintiffs' California Unfair Competition Law claims.  This law "serves important and vital public policies and interests" of the state.  *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001).

3M argues that this Court's greater familiarity with California's Cartwright Act and Unfair Competition Law should not prevent transfer, because "transfer of this case will not impose any greater analytical burden on the transferee court." (Mot. at 15-16).  This argument is plainly wrong.  While the Cartwright Act and the Sherman Act "have in common the goal of prohibiting trade-restraining combinations and monopolies," "[t]here are, however, differences in statutory wording and legislative history that lead, in some respects, to different results."  *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 985 (9th Cir. 2000).  For example, "[t]he extent to which antitrust injury is recognized under the Cartwright Act is enlarged, by statute, in comparison to federal law."  *Id.* at 991.  "[F]ederal antitrust precedents are properly included in a Cartwright Act analysis, but their role is limited: they are 'often helpful' but not necessarily decisive."  *Id.* at 985.  Thus, it would be more appropriate, and a better use of judicial resources, for this Court –

-9-

1   which is familiar with both federal and state antitrust laws – to retain jurisdiction

2   over this action.

3       Moreover, even if the Cartwright Act and the Sherman Act were identical in

4   scope, 3M has not demonstrated that Minnesota is somehow a <u>better</u> forum for this

5   litigation.  Both here and throughout its Motion, 3M seems content to make the

6   argument that Minnesota courts would be almost as good, or roughly as good, or

7   comparable to, the Central District of California.  This is not the issue.  3M needs to

8   show that its requested venue would be significantly better, and this it has not

9   shown.

10      **C.**      <u>**Judicial Economy Does Not Favor Transfer**</u>

11      3M argues that this case should be transferred due to an alleged overlap

12  between the various competition claims here and the patent claims in Minnesota.  In

13  large part, 3M's argument boils down to its assertion that "[t]his Court cannot

14  proceed to fully or fairly adjudicate the antitrust claims until certain threshold patent

15  issues have been decided".  (Mot. at 10).  3M is wrong.  The patent claims in

16  Minnesota cannot (and will not) dispose of this case nor any of the antitrust claims.

17  While a small fraction of the underlying facts may overlap, the asserted claims

18  themselves do not.

19      Even 3M recognizes this fact.  In its brief, 3M argues that if the patents are

20  found <u>invalid and unenforceable</u>, then they "cannot serve to foreclose competition

21  from Avery."  (*Id.* at 18 (emphasis added)).  At the same time, however, 3M argues

22  that if the patents are found <u>valid and enforceable</u>, then "material portions of

23  Avery's antitrust and unfair competition claims may be moot."  (*Id.* (emphasis

24  added)).  Thus, as 3M admits, regardless of the findings on validity, infringement

25  and enforceability, the Minnesota case is not determinative of the antitrust and

26  unfair competition claims here.

27      The only potential overlap between the Minnesota case and this case concerns

28  certain factual statements made by 3M before the ASTM regarding its intent to

-10-

1   enforce the patents at issue.  But this case involves much more than whether those

2   statements constitute a waiver of 3M's right to enforce its patents.  This action

3   involves nine counts concerning various violations of state and federal antitrust,

4   false advertising, and fraud statutes.  Four of Avery's counts exist completely

5   independent of the ASTM waiver argument (Count 3, Sherman Act § 1: Concerted

6   Action in Restraint of Trade; Count 4, Cal. Bus. & Prof. Code § 16720; Count 5,

7   Lanham Act §43(a):  False Advertising; and Count 6, Cal. Bus. & Prof. Code §

8   17500).  (Cmplt. at ¶¶ 105-136).  And, although the other counts make reference to

9   3M's statements before the ASTM regarding waiver, they are hardly dependent on a

10   finding of waiver.  Instead, each of these counts also relies on several other aspects

11   of 3M's improper conduct before the ASTM.

12          For example, Counts 1 and 2 (Sherman Act §2, Monopolization and

13   Attempted Monopolization) explain that 3M's deceptive advertising, product

14   disparagement campaign, and agreements with prime contractors have led to the

15   monopolization of the Broad High Performance Sheeting Market by steering

16   customers away from other types of sheeting to 3M's Type XI product.  (*Id*. at ¶¶

17   91-94).  Similarly, Counts 7 and 8 (Unfair Competition) also rely on 3M's false and

18   misleading descriptions of its Type XI product and the products of its competitors,

19   as well as the agreements with prime contractors.  (*Id.* at ¶¶ 142, 154).  Thus, none

20   of these claims rely solely on 3M's conduct before the ASTM that might amount to

21   a waiver of its right to enforce its patents.  Moreover, even the conduct before the

22   ASTM that is relevant to the claims in this case is broader than the waiver and

23   estoppel issue 3M argues is common to the Minnesota case.

24          For instance, even if 3M's statements to the ASTM do not amount to a waiver

25   of its right to enforce its patents, its other conduct before the ASTM could be found

26   anticompetitive.  Such would be the case if this Court determines that 3M's actions

27   in securing votes for the passage of the Type XI standard, which it then used to

28   monopolize the market defined by Types VIII, IX and XI sheeting, were improper.

-11-

Those actions included 3M recruiting significant numbers of new ASTM members, holding proxy votes for members who did not know they would be cast for 3M's Type XI proposal, and making agreements with those new members and others to secure their votes for the Type XI standard.  (*See, e.g.*, Cmplt. at ¶¶ 45-50, 65-69 ).[2] Thus, regardless of the outcome of the waiver and estoppel defense, Avery's antitrust and unfair competition claims will be litigated with respect to the various other facts underlying Avery's claims.

For similar reasons, courts have routinely held that a small potential for overlap is not enough to transfer a case from the plaintiff's home venue.  *See, e.g., In re Echostar Corp*, 388 Fed. Appx. 994, 995 (Fed. Cir. 2010) (upholding denial of defendant's motion to transfer where four of the forty asserted claims could potentially overlap with the other action, and finding that "[t]ransferring this case to [alternate forum] will produce only minimal gains in judicial economy, if any at all [because] [t]he [alternate forum] has not evaluated the merits of [plaintiff's] complaint and has not adopted any claim construction."); *Quality Measurement Co. v. IPSOS S.A.*, 56 Fed. Appx. 639, 643 (6th Cir. 2003) (affirming denial of defendant's motion to transfer where "[t]he district court denied the motion because it found the plaintiff's choice of forum deserved more weight than the limited judicial resources that would be saved by a transfer"); *Greatamerica Leasing Corp. v. Davis Lynch, Inc*., No. 10-CV-13-LRR, 2010 WL 265222 (N.D. Iowa June 30, 2010) (denying defendant's motion to transfer, holding that "[t]he instant action may share some factual overlap with the Texas Action, but only insofar as the Texas Action is based in part upon alleged fraud relating to one of the copy machines. The court finds this insufficient to warrant transfer"); *American Ass'n for Justice v. The American Trial Lawyers Ass'n, Inc.*, Civ. No. 07-4626 (JNE/JJG), 2008 WL

---

[2]  *Cf. Allied Tube  Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 496-497 (1988).

1   2690290, at *8 (D. Minn. Jul. 1, 2008) ("The Court concludes that Defendants have

2   failed to sufficiently substantiate their claim of 'parallel cases' or demonstrate that

3   the two cases involve 'substantial overlap.' Thus, Defendants have not demonstrated

4   that the interest of justice strongly favors transfer. Because Defendants have failed

5   to meet their burden of establishing that a transfer is warranted under section

6   1404(a), the Court denies their alternative motion to transfer venue").

7           None of the cases 3M relies on hold otherwise.  For example, in *FTC v.*

8   *Watson Pharms., Inc.*, 611 F. Supp. 2d 1081, 1085 (C.D. Cal. 2009), the plaintiff

9   argued that settlement agreements entered into in a prior patent case "harmed

10  competition by having the brand-name and generic pharmaceutical companies agree

11  not to compete and instead share monopoly profits."  In other words, the antitrust

12  claims were entirely based on actions that had occurred in the patent litigation –

13  specifically, the parties' agreements to settle in that litigation.  Defendants moved to

14  transfer the case to Georgia, where the original patent litigation had occurred.  This

15  Court granted defendants' motion, recognizing "that the merits of the underlying

16  patent cases must be examined to some extent to make an antitrust determination in

17  this case under a rule of reason analysis."  *Id.* at 1088.  By contrast, in this case the

18  underlying merits of the patent case do not need to be resolved in order to move

19  forward with the antitrust case.  Avery has raised a number of factual and legal

20  contentions regarding 3M which are unrelated to the pending patent case.  For

21  example, as outlined above, Avery's Sherman Act Section 2 claim is based on a

22  number of allegations, not just that 3M has improperly asserted its patents against

23  Avery.  Even if the patent case was resolved entirely in 3M's favor, Avery would

24  still have claims – under both federal law and California state law – pending against

25  3M.

26          Likewise, 3M cites a series of cases where the defendants raised antitrust

27  counterclaims based on inequitable conduct or fraud on the Patent Office.  *See ASM*

28  *America, Inc. v. Genus Inc.*, No. 01-2190, 2002 U.S. Dist. LEXIS 1351 (N.D. Cal.

-13-

Jan. 9, 2002); *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 684 F. Supp. 2d 1231 (D. Or. 2010); *Hewlett-Packard Co. v. GenRad, Inc.*, 882 F. Supp. 1141, 1157 (D. Mass. 1995); *Chip-Mender v. The Sherwin-Williams Co.*, No. 05-3465, 2006 U.S. Dist. LEXIS 2176 (N.D. Cal. Jan. 3, 2006); *Carlisle Corp. v. Hayes*, 635 F. Supp. 962 (S.D. Cal. 1986); *Global Candle Gallery Licensing Co. v. Nabozny*, No. 8:08-cv-2532-T-30TGW, 2009 WL 3852794 (M.D. Fla. Nov. 18, 2009).  These types of antitrust claims – known as *Walker Process* claims – are explicitly based on inequitable conduct or fraud on the Patent Office.  Thus, it is necessary to resolve those patent validity issues in order to determine whether the plaintiff has engaged in anticompetitive activity.  There are no *Walker Process* claims at issue here.

And 3M's cases concerning bifurcation or stay of antitrust <u>counterclaims</u> pending resolution of the patent claims are inapposite.  In those cases, the courts noted that it would be overly complex or burdensome for the jury to have to resolve patent and antitrust claims at the same time.  *See Masimo Corp. v. Philips Electronics North America Corp.*, No. 09-80-JJF-MPT, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010) (recognizing that adding antitrust counterclaims to the patent issues the jury will be asked to determine "would pose a difficult task for even the most astute of juries"); *Polycom, Inc. v. Codian, Ltd.*, No. 2:05-cv-520 (DF), 2007 U.S. Dist. LEXIS 98087, at *11 (E.D. Tex. April 23, 2007) ("Primarily, the Court finds that trying these claims together is very likely to confuse and burden a jury that will already be confronted with a fairly complex patent infringement case."); *In re Innotron Diagnostics*, 800 F.2d. 1077, 1084-85 (Fed. Cir. 1986) (finding that separation and stay of antitrust claims was appropriate because it would be more convenient to try "less complex" patent issues first, and the antitrust counterclaims would not be ready for over a year and would "require different proof and different witnesses.").  Again, that is not the issue here.  In fact, 3M is seeking to do precisely what these cases suggest should not be done – combine antitrust and patent claims in a single litigation, for a single trial, in Minnesota.

1   3M further argues that "[t]here is no reason for two courts to expend the
2   substantial time to understand this complex optics technology." (Mot. at 11).  In
3   these proceedings, however, Avery is not asking the Court to opine on the merits of
4   the patents or products of either party.  It does not require an advanced knowledge
5   of  retroreflective sheeting science to understand 3M's monopolizing actions before
6   the ASTM, its false advertising, or its attempts to restrain trade via agreements with
7   key contractors.  This distinction further illustrates the differences between the
8   patent action and the antitrust action.

9   **D.   Convenience Does Not Favor Transfer To Minnesota**

10   3M argues that Minnesota is a more convenient forum because two Avery
11   witnesses who participated in the ASTM process live in Chicago and Dallas, and
12   two 3M witnesses live in the Minneapolis area.  (Mot. at 21:11 – 22:14).  This does
13   not support transfer.  Obviously, Avery will make all of its own witnesses available
14   in California, its chosen forum.  Further, 3M has no basis for arguing that the
15   location of the 3M witnesses favors transfer.  As 3M knows, the practical reality of
16   contemporary litigation is that witnesses and evidence can be made available in
17   almost any jurisdiction.  3M has made no showing that its witnesses would be
18   available for trial in Minnesota, but not California.

19   The same is true for non-party witnesses.  3M has not identified any non-
20   party witnesses who will suffer inconvenience by trying the case in California.
21   Instead it claims that because non-party witnesses are likely closer to Minnesota
22   than California this suggests that inconvenience will be minimized with Minnesota
23   as the locale.  (Mot. at 22:15-27).  3M's argument is not persuasive.  Though 3M
24   concedes that non-party witnesses will be forced to travel to either venue, 3M does
25   not attempt to account for variables such as Minnesota's winter weather, including
26   snow storms, or the larger number of flights that service Los Angeles as compared
27   to Minneapolis.  Convenience does not favor transfer to Minnesota.

28

-15-

1    **IV.**    <u>**CONCLUSION**</u>

2    In filing its Complaint, Avery exercised its right to litigate in the forum of its

3    choice.  Given the substantial nexus of operative facts which took place in

4    California, the forum's own interest in litigating the case, and the comparative

5    convenience of all parties and witnesses, this was a sensible choice.  3M's motion to

6    transfer seeks only to shift the burden of travel to Avery, as the only things 3M can

7    prove exist in the District of Minnesota are (1) 3M itself, (2) 3M's employee or

8    former employee witnesses, and (3) a tangentially-related patent suit brought by 3M.

9    3M's frequent argument concerning the nationwide nature of this action does not

10   favor transfer any more than 3M's failure to identify any non-party witnesses in

11   California or anywhere else.  The burden here weighs heavily on 3M.  It has failed

12   to meet that burden.  Accordingly, the motion to transfer should be denied.

13

14   DATED: January 10, 2011

15

16

17                                   By  /s/ Emily O'Brien
                                         Emily O'Brien
18
19                                   ***Attorneys for Avery Dennison***
                                     ***Corporation***
20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AVERY'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER